HAWKINS, Justice
for the Court:
On December 10, 1981, Lum Cumbest petitioned this Court for a temporary injunction restraining and prohibiting the Election Commissioners of Jackson County from holding a special election on January 5, 1982, or any other special election to fill the office of supervisor of district number one of Jackson County pending his appeal from a conviction of fraud in public office in the circuit court of Jackson County.
The respondents to this petition were the Election Commissioners of Jackson County, in their official capacities, and the State of Mississippi.[1]
A hearing was held on this petition on December 17, 1981, before a panel of three Justices of this Court, following which an order was entered denying the petition.
On December 22, 1981, the petitioner filed a petition for rehearing with supporting brief, alleging as error the Court’s refusal to enjoin the election.
The petition for rehearing has been denied.
The gravity of this case and the legal principles involved warrant an opinion.
*684 On June 23, 1981, Mr. Cumbest and Dale Coleman were indicted by the grand jury of Jackson County for fraud in public office in cause number 11,033. Mr. Cumbest was the duly elected and acting supervisor of district number one, and Mr. Coleman was a county employee of that district. Mr. Cum-best was tried and convicted of this crime while in office in November, 1981.
Following his conviction, the Honorable Arthur B. Clark, acting as special circuit court judge, rendered judgment on November 6, 1981, removing Mr. Cumbest from public office. Following a pre-sentence investigation the circuit court, on December 4, 1981, rendered judgment sentencing both defendants to serve four years in the Mississippi Department of Corrections, with three years suspended. Mr. Cumbest has duly perfected an appeal from this conviction to this Court, which is now pending.
On December 8,1981, the board of supervisors of Jackson County entered an order declaring a vacancy in the office of supervisors’ district number one, and appointed Gavin F. Hamilton to fill the vacancy until a successor was elected in the election designated in said order for January 5, 1982. On December 8, 1981, the board of supervisors, pursuant to Miss.Code Ann. § 23-5-197 (1972), also entered an order, directed to the Election Commissioners, to hold an election on January 5, 1982, to fill the vacancy. Pursuant to this order the Election Commissioners gave public notice of the special election, as required by law.
Following these developments Mr. Cum-best petitioned this Court to advance his appeal on our docket, and for a temporary injunction against the Jackson County Election Commissioners prohibiting the holding of the special election on January 5,1982, or any other election for the remainder of his term pending the appeal of his case. His petition, as set forth in his brief, was based upon two cases of this Court: Jolliff v. State, 210 So.2d 47 (Miss.1968), and Jolliff v. State, 215 So.2d 234 (Miss.1968).
LAW
In Bucklew v. State, 192 So.2d 275 (Miss.1966), Bucklew, mayor of the city of Laurel, was convicted in the circuit court of Jones County for attempting to embezzle city funds. The judgment of conviction fined him, removed him from office, and declared the mayor’s office vacant. The day after the sentence, the governing authorities of Laurel adopted a resolution declaring the office vacant, appointed an interim mayor, and ordered a special election to fill the vacancy.
Bucklew perfected an appeal, and then filed a motion for “remedial relief” asserting that since he had perfected an appeal with supersedeas, the appeal should stay his removal from office pending appeal. He styled the motion, “Motion for Stay of Removal from Office Pending Appeal.”
In overruling this motion, this Court’s opinion first quoted Section 175 of the Mississippi Constitution and the pertinent portions of the Mississippi code section authorizing this removal:
Section 175. All public officers, for wilful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury; and, upon conviction, shall be removed from office, and otherwise punished as may be prescribed by law.
Section 4053 (codified at Miss.Code Ann. § 25-5-1 (Supp.1981)) Removals from office. If any public officers, state, district, county, or municipal, shall be convicted of misconduct or misdemeanor in office, or of any felony . . . the court, in addition to such other punishment as may be prescribed, shall adjudge the defendant removed from office, and the office of the defendant shall thereby become vacant.
The concluding rationale of the opinion merits quoting in full:
The question is whether a pending appeal from Bucklew’s conviction and removal from office, under the Constitution and statute, has the effect of superseding his removal from office. We do not think it does. Constitution section 175, without qualification, provides that “upon convic *685 tion,” the public officer “shall be removed from office.” Code section 4053 directs the trial court, in addition to any other prescribed punishment, to “adjudge the defendant removed from office, and the office of the defendant shall thereby become vacant.” Here again there is no stated limitation resulting from an appeal.
Movant argues that his removal from office is an inseparable part of the entire judgment rendered by the trial court, and, considering that judgment as an entirety, the removal is suspended. Cited as authority for this proposition is Mississippi Code Annotated section 1175 (1956). However, Constitution section 175 and the statute are self-executing. They do not contain provisions for suspension of the removal pending appeal. The general rule in other jurisdictions is stated in 43 Am.Jur. Public Officers section 200 (1942):
The mere fact that a person who has been convicted may, by means of an appeal, ultimately succeed in establishing his innocence does not necessarily entitle him in the meantime to hold the office.
This is in accord with the overwhelming weight of authority elsewhere. Annot., 71 A.L.R.2d 593, 599-605 (1960). The conviction of appellant caused an immediate vacancy, despite the appeal. Removal of a public officer from office does not constitute part of the judgment of conviction. It is a consequence imposed in the interest of the public and of sound government. It would be against the public interest to retain in office, pending an appeal, one who, upon a verdict of guilty and judgment by the court, is no longer presumed to be innocent. The presumption of innocence disappears with the conviction, even though the officer may ultimately succeed in establishing his innocence. Certainly confidence in an elective official is destroyed when he is convicted of a crime. Public office is a trust, and respect for the law and confidence in public officers must be founded upon their integrity. No doubt these were some of the reasons for the enactment of Constitution section 175 and for the decisions denying supersedeas of a removal order. They are sound. Buck-lew’s motion for remedial relief and for a stay of the removal order is overruled.
Neither the City of Laurel nor the incumbent mayor are parties to this criminal proceeding. Quo Warranto is the proper method for contesting the right to a public office, but, in order to settle this question of public importance, we have dealt with the instant motion on the issue it presented.
192 So.2d at 276.
When Bucklew’s criminal appeal was heard, the judgment of conviction was reversed and the defendant was discharged. Bucklew v. State, 206 So.2d 200 (Miss.1968).
The cases of Jolliff v. State, and Jolliff v. Wilkinson County Board of Election Commissioners, 210 So.2d 47 (Miss.1968) (considered together), compounded the problem of Bucklew.
On September 5, 1967, Jolliff was employed in a cafe in Woodville which sold beer. The sale of beer was legal in that jurisdiction. On that date, two agents of the Alcohol Beverage Control Division of the State Tax Commission entered the cafe for the purpose of checking the beer license and examining the beer stock to determine whether it was Mississippi-taxed. One agent went behind the counter and began to check the beer stored in coolers. As the second agent started behind the counter Jolliff tapped him on the shoulder and asked him if he had a search warrant. Upon being told he had none, Jolliff advised him he could not go behind the counter and would have to leave the cafe.
Thereafter, in the general November, 1967, election Jolliff was elected supervisor of district one of Wilkinson County, and took office in January, 1968. In March, 1968, he was tried and convicted in the circuit court of that county for obstruction of justice, under the provisions of Miss.Code Ann. § 2294 (1942), presently Miss.Code Ann. § 97-9-55 (1972).
*686 The judgment of conviction also removed Jolliff from the office of supervisor. Jolliff perfected an appeal from his conviction to this Court.
After Jolliff’s conviction, the board of supervisors of Wilkinson County appointed an interim supervisor until a special election could be held. The Election Commissioners of Wilkinson County issued notice of a special election to be held May 28, 1968. On April 4, Jolliff submitted a nominating petition to the Election Commissioners to place his name on the ballot in the special election. The Election Commissioners refused to do so, and through a bill of exceptions, Jolliff took an appeal to the circuit court. The circuit court affirmed the decision of the Election Commissioners, and Jolliff thereupon appealed to this Court.
With both his criminal and election contest appeals pending in this Court, Jolliff filed a motion to advance the appeals, to vacate his removal from office, and to stay the election pending the decision on his appeals. 210 So.2d at 47.
This Court refused to stay Jolliff’s removal from office, but did stay the special election pending the outcome of his appeals, stating:
In view of the mandatory terms of the constitution and statute, this Court will not stay a removal from office pending appeal, where the office holder has been convicted of a felony. Miss.Const. § 175 (1890); Miss.Code 1942 Ann. § 4053 (1956); Bucklew v. State, 192 So.2d 275 (Miss.1966). However, an issue in the instant appeals, the right to the office, cannot be kept in status quo, if there should be during the period of appeal a new election for the unexpired term and installation of a successor officer. Cf. Bucklew v. State, 206 So.2d 200 (Miss.1968).
In the instant cases, the Board of Supervisors has appointed an interim supervisor for Beat 1 of Wilkinson County to fill the vacancy created by appellant’s removal from office until an election can be held. If the called election is held on May 28, 1968, to fill the office, the appellate jurisdiction of this Court will be frustrated if the conviction is reversed, or if this Court should decide in No. 45,154 that Jolliff is entitled to be on the ballot for a special election. We do not consider these issues at this time. This Court cannot reach these two cases before the date of the special election called for May 28, 1968, because of other cases of equal importance already on its May docket.
For these reasons, No. 45,154, Jolliff v. Wilkinson County Board of Election Commissioners, and No. 45,155, Jolliff v. State of Mississippi, are hereby advanced and set for hearing in the second week of September 1968.
In aid of the appellate jurisdiction of this Court, and upon Jolliff making a bond in the amount of $1,000, to be approved by the Clerk of this Court, a temporary writ of injunction will be issued to the Wilkinson County Board of Election Commissioners and its individual members restraining and prohibiting them from holding the special election set for May 28, 1968, or any other special election, to fill the office of Supervisor, Beat 1 of Wilkinson County for the remainder of appellant’s term of office, pending the appeals of both of these cases to this Court and until a final judgment is rendered by this Court in both cases. This Court retains jurisdiction of the injunction until final judgments are rendered by this Court in both cases.
210 So.2d at 48.
In this case Mr. Cumbest did not seek to have his name placed on the ballot of the special election, as Jolliff had done. The board of supervisors of Jackson County was required by statute to order the Election Commissioners to hold the election on a date named in the order, and the Election Commissioners were likewise required to give public notice of and hold such election. Miss.Code Ann. § 23-5-197 (1972). The board of supervisors and Election Commissioners were duly fulfilling such responsibility when the petition was filed to stay the election.
*687 The petitioner clearly had no standing to interfere in any manner with this election, even if we were to accept the rationale of Jolliff, supra, and its progeny: Jolliff v. State, 215 So.2d 234 (Miss.1968); Jolliff v. Wilkinson County Board of Election Comm’rs, 215 So.2d 240 (Miss.1968); and Wilkinson County Board of Supervisors v. Jolliff, 230 So.2d 61 (Miss.1969), which we will presently address. In American Book Co. v. Vandiver, 181 Miss. 518, 527, 178 So. 598, 599 (1938), we stated:
A party plaintiff in any action for legal relief must show in himself a present, existent actionable title or interest, and this right must be complete at the time of the institution of the action; an inchoate right is not sufficient
(emphasis added).
Even if we now were to completely adopt all the legal principles asserted by Mr. Cum-best in his petition, the fact remains that his interest in the office of supervisor of district number one of Jackson County at most would be inchoate.
Moreover, we are convinced the Jolliff cases must be overruled on the principle of law that a person removed from office under section 175 of our Constitution and Miss.Code Ann. § 25-5-1 (Supp.1981) has no right whatsoever to such office by virtue of his election thereto. Section 175 states that any public officer, for willful neglect of duty or misdemeanor in office, upon conviction, “. .. shall be removed from office, and otherwise punished as may be prescribed by law.”
Miss.Code Ann. § 25-5-1 (Supp.1981) requires that the circuit court, following conviction of misconduct or misdemeanor in office, or of any felony, “. . . in addition to such other punishment as may be prescribed, shall adjudge the defendant removed from office, and the office of the defendant shall thereby become vacant.”
In Bucklew v. State, 192 So.2d 275, 276 (1966), we stated:
However, Constitution section 175 and the statute are self-executing. They do not contain provisions for suspension of the removal pending appeal.
Additionally, these statutory and constitutional mandates do not contain any provision for reinstatement in office after removal. When this Court stated in Bucklew that these provisions were self-executing, this could only mean that, by virtue of the Constitution and the statute, once a public officer is convicted of the proscribed offense in a circuit court, such officer’s right to the office is thereby extinguished. This is in accord with the majority of jurisdictions, and supported by valid societal concerns.
In the first Jolliff case, we stated:
In view of the mandatory terms of the constitution and statute, this Court will not stay a removal from office pending appeal, where the office holder has been convicted of a felony. Miss.Const. § 175 (1890); Miss.Code 1942 Ann. § 4053 (1956); Bucklew v. State, 192 So.2d 275 (Miss.1966). However, an issue in the instant appeals, the right to the office, cannot be kept in status quo, if there should be during the period of appeal a new election for the unexpired term and installation of a successor officer, (emphasis added).
210 So.2d at 48.
The opinion was in error in stating that the Mississippi Constitution authorizes the removal from office for conviction of a felony. Section 175 only authorizes removal for misconduct in office. For authority to remove a public official who has been convicted of a felony not connected with his official conduct, it is necessary to resort to the statutory authority.
Unfortunately, the opinion cited no authority to stay the election in the Jolliff case, but presumed the authority of the Court to do so. Had the Court followed the clear import of the rationale and reasoning of Bucklew, it would have held there was no further right to such office by Jolliff pending appeal. His right thereto by virtue of his election terminated with his conviction. There is no constitutional or statutory authority for a resurrection of such right, and this Court has no authority to write one.
*688 In Jolliff v. State, 215 So.2d 234 (Miss. 1968), Jolliff’s two appeals were considered, his conviction was reversed, and he was reinstated in office as of the date of the final judgment of this Court.
The opinion states:
We feel that the judgment in this particular case must be treated as an entirety and that when the judgment of conviction, upon which the removal from office was based, is reversed and the defendant discharged, it follows as a matter of course that the defendant should be restored to his former office.
Id. at 239. Our discomfiture with our opinion was shown in the paragraph following:
Now, we would be confronted with an entirely different situation if a successor had been regularly elected to the office according to law, and we want to make it crystal clear that our ruling is based entirely on the unusual and peculiar facts and posture of this case alone, (emphasis added).
Again, the reasoning of Bucklew was ignored. If the Constitutional and statutory provisions are self-executing, and neither the statute nor the Constitution make any provision for restoration to office, but are completely silent thereon, where is there any power or authority on the part of this Court to write such a provision?
In the case of State ex rel Guthrie v. Chapman, 187 Wash. 327, 60 P.2d 245, 106 A.L.R. 640 (Wash.1936), the identical question was presented. Is a public officer, who has been ousted from office pursuant to statute following his conviction in a trial court, entitled to reinstatement upon reversal of such conviction of appeal? The Washington appellate court answered that, insofar as the public official was concerned, “... the office became extinct,” since the ouster statute was self-executing and no statutory provision for reinstatement existed. Id. at 331, 60 P.2d at 246.
The opinion states two reasons therefor:
The statutes to which we have referred and the construction placed upon them are justified by these considerations: (1) The public interest demands that public affairs be administered by officers upon whom rests no stigma of conviction for infamous crimes; and (2) the proper administration of public business requires a constancy and continuity of service and therefore demands that it shall not be subjected to the hazards of frequent and uncertain changes of officers during a specified term of office.
Id. at 332, 60 P.2d at 246-47.
The Jolliff cases are a classic example of “hard cases make bad law.” The offense for which Jolliff was convicted did not involve any official misconduct, and transpired before his election. Moreover, the facts of the case, even had Jolliff been technically guilty under the statute, at most amounted to a trivial offense.
When a public official is convicted of a crime in office, both our statute and Constitution require that he be removed from public office in addition to whatever punishment he receives. He is, of course, entitled to appeal from his conviction which may ultimately be overturned, as in the cases of Messrs. Bucklew and Jolliff.
Concerning the individual’s right to office following his conviction, two separate entities must be considered: (a) the official, and (b) the people served by his office.
It must readily be conceded the office holder has a valuable right and material interest in his office. He may have gained it only at great personal sacrifice in time and money. He may have served honorably and well for many years. Furthermore, his conviction may be completely overturned on appeal.
The citizenry of this State, however, have the compelling right to be represented by the public official whom they select by ballot and in whom they can repose confidence, unstained by any conviction. The public should not be required to suffer because of his conviction. They are entitled to know that whomever they elect to fill the vacancy created by such removal will keep the office for the entire interim period remaining in the term.
*689 On balance, the rights of the public far outweigh the rights of the public official to this office and its emoluments. A public office belongs to the people it serves.
The deprivation of these rights by a conviction of a crime in office must be considered by all candidates and office holders as one of the hazards of the position, and the possibility that such public official may ultimately pursue a successful cause of action against another for his wrongful prosecution, conviction and removal should not give him any right to the office following conviction.
In short, a public office belongs to the people it serves; consequently, the rights of the public must prevail over that of the office holder. It is in this manner only that quiet, harmonious and orderly government can be insured. Any other course results in a hovering cloud of uncertainty on the processes of government.
We therefore hold that any public officer removed from office following his conviction in a circuit court and pursuant to Section 175 of our Constitution and Miss.Code Ann. § 25-5-1 (Supp.1981), forfeits all of his rights to such office, regardless of what transpires on appeal. His right to such office for the remainder of the term to which he was elected is thereby extinguished, and the Jolliff cases, insofar as they hold to the contrary, are hereby overruled.
PETITION FOR REHEARING DENIED.
PATTERSON, C. J., SMITH and SUGG, P.JJ., and WALKER, BROOM, ROY NOBLE LEE and BOWLING, JJ., concur.
DAN M. LEE, J., dissents.

. Ron Bacak, one of the commissioners, was removed as a respondent, having resigned from office and qualified as a candidate in the special election. The State, through the Attorney General, likewise was removed upon representation of the Attorney General that the State was not a proper party, and had no official interest in the outcome of the petition.